FILED

2013 OCT -1 P 2: 38

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| THE DEMOCRATIC PARTY OF VIRGINIA, <br><br> Plaintiff, <br><br> v. <br><br> VIRGINIA STATE BOARD OF ELECTIONS; CHARLES JUDD, in his capacity as Chairman of the Virginia State Board of Elections; KIMBERLY BOWERS, in her capacity as Vice-Chair of the Virginia State Board of Elections; DON PALMER, in his capacity as Secretary of the Virginia State Board of Elections; ROBERT F. MCDONNELL, in his capacity as Governor of Virginia; and KENNETH T. CUCCINELLI, II, in his capacity as Attorney General of Virginia, <br><br> Defendants. | Civil Action No. 1:13cv1218 <br> CMH/TRJ |

## COMPLAINT

Plaintiff, the Democratic Party of Virginia ("DPVA"), brings this lawsuit against Defendants and alleges as follows:

### NATURE OF ACTION

1. The DPVA brings this lawsuit to require Defendants, including the Virginia State Board of Elections ("SBE"), to stop immediately their ongoing practice of removing lawfully registered Virginia voters from voter registration lists and denying citizens their constitutionally protected right to vote in the upcoming elections on November 5, 2013. The SBE has identified approximately 57,000 registered Virginia voters for potential removal from voter registration lists and has instructed county and city registrars, functioning as the SBE's agents across the state, to "use their best judgment" in deciding whether to purge these voters and prevent them from participating in the November election. The SBE's purging list, however, is replete with errors – it includes thousands of voters who reside in Virginia and who are lawfully registered to vote. Based on information and belief, county and city registrars have

already improperly purged many qualified voters from voting lists and, at the SBE's instruction, are in the process of purging many more qualified voters in counties and cities throughout the state.

2. To prevent the SBE and county and city registrars from unlawfully denying Virginia citizens the right to vote, the DPVA seeks a preliminary and permanent injunction prohibiting the SBE and its agents from purging any additional voters prior to the November 5 election and requring the SBE and its agents to restore the voting eligibility of all citizens who have been removed from voting rolls as part of this unlawful scheme. Without an injunction, Virginia citizens, including members of the DPVA, who have already been wrongfully purged from voting rolls may be denied the right to participate in the upcoming election, and thousands of other citizens will be at risk of having their voting rights unlawfully stripped away through standard-less, ad hoc determinations by county and city registrars who are currently implementing the SBE's purging list. Adding to this harm, the SBE's unlawful purging scheme is being enforced byDefendant, Kenneth Cuccinelli in his capacity as Attorney General, notwithstanding the direct conflict of interest that Cuccinelli has as the Republican gubernatorial candidate.

3. All the components for injunctive relief are satisfied here. The SBE's purging scheme and the denial of the right to vote is a clear violation of the the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and Plaintiff thus has a strong likelihood of prevailing on the merits. The harm to the DPVA and its members is irreparable; indeed, there are few harms greater and more impossible to repair than being stripped of the constitutional right to vote mere weeks before an election. And there is a compelling public interest in protecting the voting rights of Virginia citizens and ensuring the integrity of elections.

4. The need for relief is urgent, as the SBE is rushing to complete the purging in time to have the desired effect on the upcoming election. Just last week, the SBE instructed county and city registrars to remove voters from the registration rolls immediately,

notwithstanding that Virginia's voter registration deadline is only two weeks away and the election is a mere five weeks away. Precisely to avoid the type of pre-election chaos and abdidgement of voting rights resulting from Defendants actions, the National Voter Registration Act prohibits states from removing voters from registration lists within 90 days of a federal primary or election. 42 U.S.C. § 1973gg-6(c)(2)(A). Defendants are running roughshod over the guidance provided by this federal policy.

## PARTIES

5. Plaintiff DPVA is a political organization dedicated to electing candidates of the Democratic Party to public office throughout the Commonwealth of Virginia. The DPVA has hundreds of members from across the state, including many eligible voters, who regularly support and vote for candidates affiliated with the Party. Many of these registered voters are among the 57,000 whom the SBE has identified for potential purging. In addition to harming the DPVA's members, Defendants' purging scheme is directly harming the DPVA itself by improperly interfering with the DPVA's efforts to elect candidates of the Democratic Party to public office.

6. Defendant SBE is responsible for administering Virginia election laws, supervising and coordinating the work of local election officials to ensure the legality of elections, and issuing rules and regulations for the conduct of all elections in the Commonwealth, including the November, 2013 elections for Governor, Lieutenant Governor, Attorney General, and the Virginia House of Delegates. The county and city registrars across the state function as agents of the SBE.

7. Defendants Charles Judd, Kimberly Bowers, and Donald Palmer are sued in their respective official capacities as Chairman, Vice-Chair, and Secretary of the Virginia State Board of Elections.

8. Defendant Robert F. McDonnell is sued in his official capacity as Governor of Virginia. As Governor, Defendant McDonnell is vested with the chief executive power of the Commonwealth.

3

9. Defendant Kenneth T. Cuccinelli, II is sued in his official capacity as Attorney General of Virginia and based on his duties under state law to ensure that the Constitution and laws of the Commonwealth of Virginia are faithfully executed. Defendant Cuccinelli is the chief legal officer of the Commonwealth of Virginia and, in that capacity, is enforcing the SBE's unlawful purging of voters. He and his office provide legal counsel to the SBE, while Cuccinelli himself is the Republican candidate for governor. Cuccinelli has a direct personal interest in the SBE's purging campaign, since the removal of voters from registration lists affects who is permitted to vote in the gubernatorial election. Notwithstanding his personal interest, Cuccinelli is actively involved in implementing the purging campaign and has failed to recuse himself.

## JURISDICTION AND VENUE

10. This Court has jurisdiction to hear Plaintiffs' claims pursuant to 42 U.S.C. §§ 1983, and 28 U.S.C. §§ 1331. This Court has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

11. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and in this division. Voters in counties within this division are directly affected by Defendants' purging scheme, including voters in the counties of Arlington, Fairfax, Loudoun, and Prince William.

## FACTUAL ALLEGATIONS

### The Interstate Voter Crosscheck Program

12. In 2012, Virginia joined the Interstate Voter Crosscheck Program ("IVCP") under which it mutually shares voter registration lists with other states for the purported purpose of identifying people who are registered to vote in more than one state and removing them from voter registration lists. The state joined this program pursuant to, *inter alia*, Va. Code Ann. § 24.2-404(A)(10), which provides that Virginia will: "Cooperate with other states and jurisdictions to develop systems to compare voters, voter history, and voter registration lists to ensure the accuracy of the voter registration rolls, to identify voters whose addresses have

4

changed, to prevent duplication of registration in more than one state or jurisdiction, and to determine eligibility of individuals to vote in Virginia." Virginia performed its first crosscheck in January, 2013.

13. The states that have joined the ICVP are overwhelmingly controlled by the Republican Party; of the 26 states that have joined, 21 have Republican legislatures and/or Republican governors.

14. The ICVP is the brainchild of Kansas Secretary of State, Kris Kobach, a Republican, who has actively lobbied other Republican secretaries of state around the country to adopt the program. Kobach is a strong advocate of election administration practices that are purportedly designed to prevent voting fraud but that have the effect of suppressing voter turn-out among the poor, the elderly, and minorities – many of whom vote Democratic. These practices include, for example, (1) a photo identification ("ID") requirement; (2) signature verification and driver's license number requirements for absentee voters; and (3) proof of citizenship requirements for new voters.

15. Of the 26 states that have joined the ICVP, 19 have also adopted voter ID laws. In March, 2013, shortly after peforming its first crosscheck under the ICVP, Virginia enacted a photo voter ID law that goes into effect on January 1, 2014.

### The SBE's Inaccurate Voter Purging Lists

16. Based on Virginia joining the ICVP, the Republican majority SBE obtained voter registration lists from multiple other states and compared those lists with its list of registered Virginia voters. Based on these comparisons, the SBE identified approximately 57,000 registered Virginia voters who supposedly are registered to vote in another state and subject to potential purging. The SBE broke down this list of 57,000 voters by counties and cities and distributed county-specific and city-specific lists to local registrars throughout the state. The SBE instructed the registrars to review the names on the lists and to decide whether to purge them from the voting rolls.

17. In distributing the county and city-specific purging lists, the SBE emphasized to the registrars that "Virginia will take action on voters that are identified as residing and registered in another state." *See* Exhibit A (email dated Septermber 3, 2013 from Defendant, Don Palmer, to county and city registrars). The SBE has represented to the registrars that the purging lists it has provided to individual counties and cities are "extremely accurate." *See* Exhibit B at 2 (SBE's Frequently Asked Questions Regarding Interstate Crosscheck Program"). The SBE also has told the registrars that the SBE's mere inclusion of a person on the lists is "[l]egally" a "sufficient basis for cancellation" of that person's eligibility to vote. *Id.*

18. While representing that its purging lists are "extremely accurate" and provide a legally sufficient basis for cancelling voters' registrations, the SBE also directed the registrars to confirm that a person is properly on the list and subject to purging by "closely review[ing] the data provided against the identified individual's voter registration and voter history." *See* Exhibit A. If there is any ambiguity about whether a person should be purged, the SBE left it up to the county and city registrars to make the decision based on their "best judgment": "If you believe that the match is not accurate, that the individual may have registered in Virginia *after* their registration in another state, or there is some other issue then <u>you may wish to hold off on cancellation</u> until you have had the opportunity to research the matter further. <u>Ultimately, you need to use your best judgment</u>." Exhibit A (emphasis added to underlined portion and emphasis in original in italicized portion). Under this directive, even if a registrar determines that a voter was wrongfully included on the SBE's list, the registrar is not required to refrain from purging the voter but instead can decide whether it "wish[es] to hold off on cancellation." *Id.*

19. When it distributed the county-specific lists to the county registrars, the SBE did not provide any criteria or standards for the officials to apply in determining whether a voter should be purged from Virginia's voting records where there is doubt that the voter is registered in another state. Instead, as shown by the language quoted above, the SBE merely told the registrars "to use your best judgment," without defining in any way what that means. The

ability of tens of thousands of registered Virginia voters to participate in the upcoming elections thus depends on the subjective "best judgment" of hundreds of different local election officials throughout the state. Moreover, these officials are deciding the fate of tens of thousands of voters based on the starting assumptions – provided by the SBE – that the purging lists are "extremely accurate" and provide a "legally sufficient basis" for purging voters from the state's voter registration lists.

20. The lack of standards might not be problematic if the SBE's list of 57,000 voters and related county and city lists were accurate and included only voters who are actually registered and voting in other states. But, contrary to the SBE's representation of "extreme accuracy," the lists are riddled with errors and include thousands of qualified Virginia voters. Local election officials in counties throughout the state have identified countless errors in the SBE's list of 57,000.

21. Based on information and belief, in Fairfax County, the Deputy Registrar has reported that of the 7,934 voters identified by the SBE for potential purging, more than 700 are lawfully registered to vote in Virginia.

22. Based on information and belief, in Chesterfield County, the registrar has determined that the SBE's purging list is "suspect" and potentially includes hundreds of lawfully registered voters among the 2,262 voters the SBE has identified for potential purging. Based on an initial review, the Chesterfield registrar has already determined that approximately 180 people on the list are qualified Virginia voters.

23. Based on information and belief, in Loudon County, where the SBE has identified 2,156 voters as potential purging targets, the registrar has commented publicly that the SBE "cross checks the voter registration and *sometimes they get it right and sometimes they don't.*" Exhibit C (Article dated September 25, 2013 from "Leesburg Today") (emphasis added).

24. Based on information and belief, in the City of Chesapeake, where the SBE has identified approximately 1,800 voters for potential purging, the deputy registrar has determined

7

based on an initial review that many lawfully registered voters – "maybe 10 percent" – are improperly on the SBE's list.

25. Based on information and belief, in Arlington County, where the SBE has identified 2,300 voters for potential purging, the registrar has determined preliminarily that approximately 10 percent of the targeted voters are lawfully registered voters and are improperly on the SBE's list.

26. Based on information and belief, in Bedford County, where the SBE has identified 418 voters for potential purging, the registrar has concluded that that 68, or 16%, of the targeted voters are lawfully registered voters and are improperly on the SBE's list.

27. Based on information and belief, in the City of Bristol, where the SBE has identified 552 voters for potential purging, the registrar has identified more than 60 lawfully registered voters who are improperly on the SBE's list.

28. Based on information and belief, the errors in the purging lists described in the above examples exist in all or most of the lists that SBE provided to registrars throughout the state.

29. Relying on the SBE's flawed lists, many county and city registrars have already purged hundreds of voters from Virginia's voter registration lists. Based on information and belief, the voters who have been purged include people who are lawfully registered to vote in Virginia. By way of example, and based on information and belief, Accomack County has purged 182 voters; Appomattox County has purged 33 voters; Bedford County has purged 350 voters; Botetourt County has purged 162 voters; the City of Bristol has purged 69 voters; and Brunswick County has purged approximately 65 voters.

### The Unequal Application of the Voter Purging Process

30. In addition to improper purging resulting from election officials' reliance on the SBE's flawed lists, there is a lack of uniformity and equal application of the law in the SBE's purging process. Whether a voter is subject to potential purging before the upcoming November election depends on the county or city in which he or she lives. While the cities and

counties listed above have already purged voters, others have stated that they will not take any action until after the election. These include, by way of example, Chesterfield County and Loudoun County.

31. Meanwhile, other cities and counties are carrying out the purging process now and may only partially complete it before the election. These include, by way of example, Fairfax County, Prince William County, Henrico County, the City of Chesapeake, and Arlington County.

32. In addition to the variation among cities and counties as to whether the purging process is taking place, there is no transparency in the purging decisions and no set of consistent standards on which the decisions are based. Instead, the purging process is hidden from public view and, as described, is left to the "best judgment" of local officials, which varies from one election official to another.

33. Accordingly, whether a voter is subject to purging before the upcoming election depends not only on the city or county in which he or she lives, but also on the subjective judgment of the local election officials who review the SBE's lists. The judgment and decision-making of local officials also will vary based on their willingness to defer to the SBE's representations that the purging lists are "extremely accurate" and provide a "legally sufficient basis" for purging voters from registration lists. There are thus no meaningful safeguards to protect against voters being improperly purged from voting lists and treated differently from similarly situated voters in other counties and cities.

34. The disparate treatment of voters also extends to the widely varying practices of counties and cities in addressing voters who have been wrongfully purged and seek to have their voting eligibility restored. Some city and county registrars are requiring these voters to re-register, as if they had never been qualified voters before, while other registrars are automatically restoring registration. Some registrars are requiring wrongfully purged voters who come to vote on election day to submit provisional ballots, which means their votes may

never be counted in the election, while other registrars are allowing wrongfully purged voters to submit regular ballots that will be counted on election day.

## CAUSES OF ACTION

### COUNT I

**(Violation of 42 U.S.C. § 1983, the Equal Protection Clause to the Fourteenth Amendment, and *Bush v. Gore*)**

35. The DPVA restates and incorporate by reference the allegations of paragraphs 1 through 33 above as though fully set forth herein.

36. The Constitution of the United States protects the right of all qualified citizens to vote. The right to vote is fundamental and is one of the most important rights in our democratic society. It is protected by Articles I and II of the Constitution and the First and Fourteenth Amendments.

37. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution guarantees qualified voters a substantive right to participate equally with other qualified voters in the electoral process. The Equal Protection Clause applies to the right to vote in state elections and protects the state electoral franchise. *See Harper v. Va. Bd. of Elections*, 383 U.S. 663, 665 (1966) ("[O]nce the franchise is granted to the electorate, lines may not be drawn which are inconsistent with the Equal Protection Clause of the Fourteenth Amendment."); *Greidinger v. Davis*, 988 F.2d 1344, 1349-50 (4th Cir. 1993). By removing qualified voters from Virginia's voting rolls, Defendants are denying the DPVA's members the right to vote in violation of the Equal Protection Clause.

38. The substantive right to participate equally with other voters in the electoral process is not just protected in the initial allocation of the franchise; equal protection applies to the manner of its exercise as well. *See Bush v. Gore*, 531 U.S. 98, 104 (2000). A state may not arbitrarily impose disparate treatment on similarly situated voters.

39. The SBE's purging process treats voters differently in determining whether they are permitted to exercise the electoral franchise. Depending on the county or city of residence and the subjective "best judgment" of local registrars, one voter may be permitted to exercise

the electoral franchise while another similarly situated voter may be prohibited. Further, one qualified voter in a particular county who is wrongfully removed from voting rolls may have her voting right restored while a similarly situated voter in a different county may not. This disparate treatment is arbitrary, and Defendants have no legitimate justification for it. It directly and improperly affects the DPVA's members and the DPVA's efforts to elect candidates of the Democratic Party to public office.

40. At best, Defendants' conduct reflects inadvertent sloppiness in attempting to ensure that unqualified voters do not vote in Virginia's election. At worst, the conduct is driven by partisan politics. Neither explanation justifies the conduct, as the right of Americans to exercise their electoral franchise "must not be sacrificed to administrative chicanery, oversights, or inefficiencies." *Project Vote v. Long*, 682 F.3d 331, 335 (4th Cir. 2012).

41. Thousands of Virginia voters, including the DPVA's members and supporters, will suffer, or are at risk of suffering, direct and irreparable injury from Defendants' unlawful purging of qualified voters. Many of these voters may lose the ability to vote in the November election.

42. Based on the foregoing, Defendants, acting under color of state law, have deprived and will continue to deprive the DPVA's members and the DPVA of equal protection under the law secured to them by the Fourteenth Amendment to the United States Constitution and protected by 42 U.S.C. § 1983.

## COUNT II

**(Violation of 42 U.S.C. § 1983 and the Due Process Clause to the Fourteenth Amendment)**

43. The DPVA restates and incorporate by reference the allegations of paragraphs 1 through 41 above as though fully set forth herein.

44. The Due Process Clause to the Fourteenth Amendment of the United States Constitution provides that no state "shall deprive any person of life, liberty, or property, without due process of law." This provision guarantees substantive due process and prohibits a state

from depriving a person of "life, liberty, or property" without an appropriately compelling government interest.

45. The liberties protected by the Due Process Clause include the right to vote and to be free from disparate treatment in the exercise of the electoral franchise, which are fundamental liberties at the core of our democracy.

46. By removing qualified voters from Virginia's voting rolls, Defendants are denying the DPVA's members and supporters the right to vote in violation of the Due Process Clause and without any legitimate government interest. This directly and improperly affects the DPVA's members and the DPVA's efforts to elect candidates of the Democratic Party to public office.

47. By subjecting some voters to disparate treatment in their exercise of the electoral franchise, Defendants are denying the DPVA's members and supporters the right to vote in violation of the Due Process Clause and without any legitimate government interest.

48. Based on the foregoing, Defendants, acting under color of state law, have deprived and will continue to deprive the DPVA's members and the DPVA of the substantive due process of law secured to them by the Fourteenth Amendment to the United States Constitution and protected by 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

Accordingly, the DPVA respectfully request that this Court enter the following equitable relief:

1. An order declaring that Defendants' process for purging voters from Virginia's voter registration lists, including the use of the SBE's voter purging list and the standard-less delegation of decision-making authority to local election officials, violates the Equal Protection Clause and the Due Process Clause of the United States Constitution;

2. A preliminary and permanent injunction that prohibits Defendants, their respective agents, servants, employees, attorneys, successors, and all persons acting in concert with each or any of them – including all county and city voting registrars – from implementing

Defendants' process for purging voters from Virginia's voter registration lists, including a preliminary and permanent injunction that prohibits the use of the SBE's voter purging list and bars local election officials from exercising the standard-less decision-making authority delegated by the SBE;

3. A preliminary and permanent affirmative injunction that (i) requires Defendants, their respective agents, servants, employees, attorneys, successors, and all persons acting in concert with each or any of them, to restore to Virginia's voter registration lists all voters who were removed from those lists as the result of Defendants' unlawful purging; and (ii) requires the SBE to instruct all county and city voting registrars in writing to cease implementing Defendants' process for purging voters from Virginia's voter registration lists and to restore to Virginia's voter registration lists all voters who were removed from those lists as the result of Defendants' unlawful purging;

4. Attorney's fees and costs; and

5. Such other or further relief the Court deems to be appropriate.

Dated: October 1, 2013

Respectfully submitted,

By _____
John K. Roche (VA Bar No. 68594)
Marc E. Elias (pro hac vice to be filed)
John M. Devaney (pro hac vice to be filed)
Perkins Coie, LLP
700 13th St., N.W., Suite 600
Washington, D.C. 20005-3960
Phone: (202) 434-1627
Fax: (202) 654-9106
Email: JRoche@perkinscoie.com

*Attorneys for Plaintiff*